**IMPORTANT NOTICE - COURTESY COPIES SHOULD NOT BE PROVIDED TO ANY JUDGE. ALL COMMUNICATIONS WITH THE COURT SHALL ONLY BE THROUGH DOCUMENTS FILED WITH THE CLERK OF COURT**

RECEIVED IN ALEXANDRIA, LA
APR - 8 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD TURKS<br>LA. DOC. #100499 | DOCKET NO. 09-CV-1181; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| TIM WILKINSON, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION
### TO DISMISS CERTAIN DEFENDANTS

Pro se Plaintiff Richard Turks filed the instant complaint pursuant to 42 U.S.C. §1983 on July 10, 2009. His motion for leave to proceed *in forma pauperis* was granted on July 21, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC), and he is incarcerated at the Winn Correctional Center (WCC) in Winnfield, Louisiana. He claims that he was denied adequate medical care by the following defendants: Tim Wilkinson, Dr. Pacheco, Corrections Corporation of America (CCA), A. Woods, Pat Thomas, Joanne Smith, CCA Unknown Medical Provider, R. Keiffer, Linda Steele, LDOC, and Linda Ramsey.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the reasons that follow, it is recommended that the claims against some of the defendants be dismissed.

**Factual Background**

Plaintiff alleges that on July 21, 2008, he made a sick call for severe and unbearable pain in his low back or hip on the right side. Pacheco diagnosed the pain as a sprained muscle and prescribed Naproxen. After one week on Naproxen, Plaintiff began having stomach pain and "vomiting constantly." [Doc. #1, p.4] Plaintiff was in so much pain that he could barely walk. He made an emergency sick call on July 29, 2008, and he was transported to an outside hospital for treatment. On July 30, the hospital physician told Plaintiff that the medication prescribed by Pacheco had burned a hole in his stomach and could have killed him. Plaintiff underwent an operation to fix the hole, and he was discharged to the prison infirmary where he remained for three days.

Plaintiff could not tolerate the prison food after surgery because it made him ill. He claims that, although the hospital physician prescribed medication for stomach pain, WCC officials would not administer the medication to Plaintiff. Plaintiff was starving and experienced severe weight loss. After being released from the infirmary, Plaintiff asked Dr. Pacheco to place him on a special diet. Pacheco refused. On August 13, 2008, Plaintiff was examined by a nurse who advised Plaintiff that he had "a knot in his stomach." Dr. Pacheco disagreed with that observation. Plaintiff was not provided with a "duty status" to exempt him from

work following surgery. On August 15, 2008, Plaintiff informed Angel Martin that he could not endure the pain anymore. She sent Plaintiff to the infirmary for medication, but Plaintiff was not provided medication until eight days later. On August 27, 2008, Plaintiff made a sick call because of pain and the knot in his stomach. Plaintiff was not provided any treatment. On September 10, Plaintiff told the nurse that the knot in his stomach was hurting really bad and he was also suffering from a migraine headache. On September 11, 2008, Plaintiff could not bend or stand because of the pain in his stomach. On September 12, Plaintiff went to sick call and was told by Dr. Pacheco that the "knot" he felt was just a bone. Pacheco denied treatment. On September 13, 2008, Plaintiff could not get out of bed because of severe pain.

From September 14, 2008 through September 18, 2008, Plaintiff suffered with pain and could not keep any food down. On September 19, 2008, the medical staff discontinued Plaintiff's medication. From September 20 to September 26, Plaintiff did not eat and continued to lose weight. On January 9, 2009, Plaintiff went back to the infirmary and Dr. Pacheco reinstated his medication. Plaintiff claims that he has not been able to stand up straight or eat normally since his operation. He also has a large scar on his stomach that depresses him when he sees it.

Plaintiff was ordered to amend his complaint to allege how each Defendant violated Plaintiff's constitutional rights.

3

Plaintiff amended his compliant and alleged that Tim Wilkinson was informed on August 26, 2008, that Plaintiff had a knot in his stomach, and Wilkinson ignored Plaintiff's complaint and failed to ensure that Plaintiff receive medical treatment. Plaintiff alleges that Dr. Pacheco acted with deliberate indifference to Plaintiff's safety and health by prescribing medication that caused Plaintiff to suffer severe damage. Plaintiff alleges Defendant A. Woods was informed on September 10, 2008, that Plaintiff was experiencing medical problems. Plaintiff told Woods that he had made a sick call on August 8, 2008 for a knot in his stomach that was causing pain and that he still had not been examined. Woods refused to treat Plaintiff, exhibiting deliberate indifference to his serious medical needs.

Plaintiff alleges that on August 15, 2008, Pat Thomas was informed that a doctor at Huey P. Long Hospital had prescribed medication for Plaintiff post-surgery. Plaintiff informed Thomas that over a week had passed after surgery and Plaintiff had still not been provided his medication. Thomas responded that Plaintiff was receiving appropriate medical care. She ignored Plaintiff's complaints.

Plaintiff complains that Joanne Smith, who treated him three times in July and August 2008, and R. Keiffer, who treated Plaintiff on August 5, 6, 7, 8, 9, 13, 20, 27, 28, 2008, "allowed" Dr. Pacheco to prescribe medication that they knew Plaintiff should

4

not take due to his ulcers.

## Law & Analysis

1. Joanne Smith, R. Keiffer & Unknown Medical Provider

The allegation against Keiffer and Smith - that they allowed their supervisor, Dr. Pacheco, to prescribe medicine that they knew Plaintiff should not take - is entirely conclusory. It is well settled that the plaintiff must allege specific facts giving rise to a constitutional violation. Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002)(citing Baker v. Putnal, 75 F.3d 190, 194 (5th Cir. 1996). Plaintiff has presented only a single conclusory allegation against Keiffer and Smith as to what they knew and "allowed" Dr. Pacheco to prescribe. Plaintiff's claim against them should be dismissed. Likewise, Plaintiff's claim against the "Unknown medical provider" should be dismissed as Plaintiff has failed to present factual allegations against that individual.

2. Linda Steele & Linda Ramsey

In the amended complaint, Plaintiff alleges that Linda Steele and Linda Ramsey are the A.R.P. screening officers, and that they failed to remedy Plaintiff's problems when he filed his complaints. Again, Plaintiff has failed to allege facts giving rise to a constitutional violation. Plaintiff does not have a federally protected liberty interest in having his grievances addressed and resolved to his satisfaction. "As he relies on a legally

nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." <u>Geiger v. Jowers</u>, 404 F.3d 371, 374 (5th Cir. 2005)(prisoner did not have liberty interest in having grievance against mail room and security staff of prison resolved to his satisfaction).

3.  LDOC

Plaintiff names the LDOC as a defendant. The Eleventh Amendment bars suits for damages against a state in federal court unless the state waives sovereign immunity. Eleventh Amendment immunity extends to state agencies that act as arms of the state. The Louisiana Department of Public Safety and Corrections is a department of the executive branch of the state, La. R.S. 36:4. It is an agency of the state of Louisiana, which has Eleventh Amendment immunity from suit in federal court. <u>Jackson v. Department of Public Safety for State of Louisiana</u>, 675 F.Supp. 1025, 1026 (M.D.La.1985); <u>Anderson v. Phelps</u>, 655 F.Supp. 560, 563-64 (M.D.La.1985). Thus, the LDOC should be dismissed.

4.  CCA

Plaintiff attempts to hold CCA liable under §1983 for the acts of its employees. However, just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, so is a private corporation not vicariously liable under §1983 for its employees' deprivations

of others' civil rights. Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir. 2003). The test to determine liability for a private prison-management corporation under §1983 is more or less identical to the test employed to determine municipal or local government liability. See Phillips v. Corrections Corp. of America, No. 02-766, 2006 WL 1308142 at *3 (W.D.La. May 10, 2006); see also, Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978). That is, a private corporation is liable under §1983 only when an official policy or custom of the corporation causes or is the moving force of the constitutional violation. Id.

The compliant and amended complaint are devoid of any allegations that an official policy or custom of CCA was the "moving force" behind its employees' alleged deprivation of Plaintiff's civil rights. Accordingly, Plaintiff's claims against CCA should be dismissed as frivolous.

## Conclusion

For the foregoing reasons, it is recommended that the claims against **ONLY THE FOLLOWING DEFENDANTS** be **DENIED and DISMISSED** with prejudice for failing to state a claim for which relief can be granted: **Joanne Smith, R. Keiffer, Unknown Medical Provider, Linda Steele, Linda Ramsey, CCA, and LDOC**. Service of process is being ordered on the other defendants.

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Federal Rule of Civil Procedure 72(b), parties aggrieved by this**

recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Federal Rule of Civil Procedure 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 7th day of April, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE