RECEIVED
IN ALEXANDRIA, LA.
MAY 3 0 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD TURKS,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 09-CV-1181 |
| VERSUS | |
| TIM WILKINSON, et al.,<br>    Defendants, | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a pro se civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Richard Turks ("Turks) on July 10, 2009, and amended on February 17, 2010. The remaining defendants are Tim Wilkinson (warden of the Winn Correctional Center ("WCC")in Winnfield, Louisiana), Angie Woods (an RN employed at WCC), and Pat Thomas (medical director at WCC).[1]

Turks alleges that, on July 21, 2008, he made a sick call for pain hin his right low back or hip; Dr. Pacheco examined Turks on July 28, 2008, diagnosed a muscle sprain and prescribed Naproxen,

---

[1] Turks also named as defendants Dr. Pacheco (a medical doctor formerly employed at WCC), Corrections Corporation of America (operator of WCC), Joanne Smith (an LPN employed at WCC), R. Keiffer (an RN employed at WCC), Linda Steele (the ARP screening officer at WCC), Linda Ramsay (an ARP reviewing officer for the La. DOC), the Louisiana Department of Corrections ("La. DOC") (owner of WCC), and the Unknown CCA-contracted medical provider for WCC; they have all been dismissed (Docs. 13, 37).

a muscle relaxer (Doc. 1). Turks contends that, after taking Naproxen for a week, he began having stomach pain and vomiting (Doc. 1). Turks alleges that he was taken to an outside hospital, where he was told the Naproxen had made a hole in his stomach and underwent surgery to repair the hole (Doc. 1). Turks contends he was returned to WCC after his surgery, where he was not given the special diet prescribed for him, was not given the medication prescribed by the doctor at the hospital for eight days, and was not given a special duty status following surgery (Doc. 1). For relief, Turks asks for a jury trial, injunctive and declaratory relief, and monetary damages.

Defendants Thomas, Wilkinson, and Woods answered the complaint (Doc. 15) and filed a statement of issues for trial (Doc. 21). Turks filed a motion for summary judgment (Doc. 39), to which the remaining defendants filed a cross-motion for summary judgment (Docs. 41, 46).

The motions for summary judgment are now before the court for disposition.

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Stewart v. Murphy</u>, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct

the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Medical Care

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291. Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs. Norton

v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

A prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities.  Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner.  Farmer, 511 U.S. 825, 114 S.Ct. at 1976.  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.  Norton, 122 F.3d at 291, citing Estelle, 429 U.S. at 106, 97 S.Ct. at 292.  "Subjective recklessness", as used in the criminal law, is the appropriate test for deliberate indifference.  Norton, 122 F.3d at 292, citing Farmer, 511 U.S. at 838-40, 114 S.Ct. at 1980.

Although the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive *adequate* medical care.  A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Easter v. Powell, 467 F.3d 459, 463-464 (5th

Cir. 2006), citing Domino v. Tex. Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Also, Chapman v. Johnson, 2009 WL 2391496, *2 (5th Cir. 2009)(fact that defendant was aware that inmate had a serious injury and was instructed to provide pain relief medication, but did not do so, could demonstrate an Eighth Amendment violation). A prison official is also deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

Angie Woods

Turks states in his affidavit (Doc. 39) that, on September 10, 2008, he told RN Angie Woods that he had made a sick call request on August 8, 2008 for a "knot" in his stomach that was causing pain, and that he still had not been examined a month later. Turks further states in his affidavit (Doc. 39) that Woods refused to treat him, exhibiting deliberate indifference to his serious medical needs.

Defendants show that, on September 10, 2008, Turks submitted an inmate request form regarding a "knot" in his stomach and inquiring when he would be seen by the doctor (Doc. 41, Exs. 3, 29). Defendants further show that, on September 11, 2008, RN Woods advised Turks that he was on the doctor's call out list (Doc. 41, Exs. 3, 29), and Turks was seen by Dr. Pacheco on September 12,

2008 (Doc. 41, Exs. 3, 13).

Since Turks asked to see the doctor, and not a nurse, RN Woods did not "refuse" to treat Turks, but instead reassured him that he was on the doctor's call-out list. Therefore, Turks has not shown that RN Woods was deliberately indifferent to his serious medical needs and that he did not receive medical care.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment (Doc. 46) should be granted in favor of Woods, Turks' motion for summary judgment (Doc. 39) should be denied, and Turks' action against Woods should be dismissed.

<u>Pat Thomas</u>

Turks states in his affidavit (Doc. 39) that, on August 15, 2008, Pat Thomas was informed that the doctor at the Huey P. Long Hospital, where Turks had surgery, had prescribed him medication to take after his surgery, but he was still not receiving it eight days after his surgery. On August 15, 2008, Turks submitted an Inmate Request Form inquiring about the medication the physician at Huey P. Long Medical Center had prescribed and also about his duty status (Doc. 41, Exs. 3, 27).

Turks further states in his affidavit that Thomas responded that he was receiving "appropriate medical care" and ignored his complaints (Doc. 39). Turks' inmate request form shows that Thomas responded to Turks' request by stating he was "receiving

7

appropriate treatment" and his duty status was "appropriate" (Doc. 41, Exs. 3, 27).

Thomas's rote response failed to address Turks' request for medication. Although Thomas' response tends to indicate that she was deliberately indifferent to Turks' serious medical needs, Turks has not show an injury arising therefrom. Turks saw a nurse the next day, on August 16, 2008, and was given Motrin and a duty status to lay in for five days (Doc. 41, Exs. 3, 21), and he had a check up in the Huey P. Long Hospital surgery clinic on August 20, 2008 (Doc. 41, Exs. 3, 22). Since Turks' questions about medication and his duty status were addressed by others, he has not shown that he did not receive adequate medical care.

Since there are no genuine issues of material fact which preclude a summary judgment, defendants' motion for summary judgment (Doc. 46) should be granted in favor of Thomas, Turks' motion for summary judgment (Doc. 39) against Thomas should be denied, and Turks' claims against Thomas should be dismissed.

<u>Warden Wilkinson</u>

Turks states in his affidavit (Doc. 39) that Wilkinson was informed on August 26, 2008 that Turks had a "knot" in his stomach, and that Wilkinson ignored Turks' complaint and failed to ensure that he received medical treatment.

Turks made a sick call request on August 27, 2008 (Doc. 41, Ex. 23). RN Keiffer evaluated Turks for his complaint of a knot at

his incision site on August 27, 2008 and referred Turks to the doctor (Doc. 41, Ex. 24).

Inmate medical care is not obtained by making verbal complaints and requests to the warden. Turks followed the correct procedure for obtaining medical care by filling out an inmate request form the next day, and received prompt medical care thereafter. Therefore, Turks has not shown that Warden Wilkinson was deliberately indifferent to his serious medical needs or that he did not receive adequate medical care.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment (Doc. 46) should granted in favor of Wilkinson, Turks' motion for summary judgment (Doc. 39) should be denied, and Turks' action against Wilkinson should be dismissed.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 46) be GRANTED, Turks' motion for summary judgment (Doc. 39) be DENIED, and Turks' action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served

with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 29th day of May 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE